IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                          Case No.  13-10052-JWB

CURTIS PROFIT,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to suppress.  (Doc. 78.)  The motion has been fully briefed and is ripe for decision.  (Docs. 79, 82.)  The court held a hearing on Defendant's motion along with an evidentiary hearing on his supervised release violation on October 21, 2021.  For the reasons provided herein, Defendant's motion is DENIED.

### I.  Facts and Procedural History

On December 16, 2013, Defendant pleaded guilty to a violation of 18 U.S.C. § 922(g), felon in possession of a firearm.  (Doc. 16.)  On March 3, the Honorable Monti L. Belot sentenced Defendant to 78 months imprisonment and three years of supervised release.  (Doc. 20.)  Defendant has since been released from prison and is on supervised release.  Defendant is subject to several conditions of supervision, including a standard condition requiring that Defendant notify his probation officer at least ten days prior to any change in residence.  (*Id.* at 3.)  The special conditions prohibit Defendant from possessing a firearm and ammunition and also provide that Defendant shall submit his person, house, residence, vehicle, and any property under his control to a search by the United States Probation Officer at a reasonable time and in a reasonable manner

1

based upon reasonable suspicion of a violation of a condition of release.  (*Id.* at 4.)  Defendant is also to warn any other residents that the premises may be subject to searches.  (*Id.*)

On September 30, 2020, Defendant was arrested by the Wichita Police Department and charged with felon in possession of a firearm after the vehicle he was driving was searched by police officers during a traffic stop.  A Taurus .40 caliber handgun was discovered under the driver's seat during the search.  (Doc. 41 at 1.)  Defendant was arrested on a state charge of felon in possession of a firearm.  As a result, this court issued a warrant for Defendant's arrest.  (Doc. 39.)  On February 18, 2021, the government moved to dismiss the petition for revocation of supervised release.  (Doc. 51.)  In that motion, the government stated that the vehicle Defendant was driving when he was arrested was a rental and another individual had claimed ownership of the Taurus handgun.  Therefore, the United States did not believe that it could establish a violation of supervised release.  The court dismissed the petition after holding a hearing.  (Doc. 54.)

On March 14, 2021, United States Probation Officer Jason Jordan was investigating a domestic incident in which Defendant was a potential witness.   During his investigation, he observed that the address listed for Defendant in that investigation, 3208 S. Vine (referred to throughout as "unreported address"), was not the address that Defendant had reported to the probation office as his residential address, which was on Richmond Street in Wichita, Kansas. Jordan than began an investigation into whether Defendant was residing at the unreported address in violation of his conditions of supervised release.  Jordan learned from the City of Wichita that the water service for the unreported address was in Defendant's name.  Jordan then conducted surveillance of the unreported address.

During his surveillance, Jordan observed Defendant's vehicle at the unreported address on multiple occasions.  During the time period between March 18 and April 23, Jordan conducted

twelve observations at the unreported address.  Jordan observed Defendant's vehicle, a white Chevrolet Malibu, at the unreported address on ten of those occasions.  On March 18, Jordan observed Defendant's vehicle parked in the driveway at two different times, 2:30 p.m. and 5:00 p.m..  On March 26, he also observed the vehicle backed into the driveway at 5:22 p.m. and then again in the late evening.  Notably, on March 27 at 7:35 a.m., he observed Defendant's vehicle parked in the same spot in the driveway, leading Jordan to believe that Defendant had spent the night at the unreported address.  On that same morning, he also observed a Black sport utility vehicle parked on the street, which was registered to DaShouna Beals.  On March 29, he again observed the vehicle in the driveway.  On March 30, at 5:35 p.m., Jordan observed Defendant's vehicle in the driveway and saw that Defendant was standing on the porch and smoking.

On April 1, at 3:35 p.m., Jordan parked down the street from the unreported address to observe for an extended period of time.  Defendant's vehicle was not at the unreported address but Jordan observed Crystal Profit, Defendant's sister, pull up to the unreported address, knock on the door, and, when no one answered, she set something inside the screen door.  She then left the unreported address.  That was the only occasion that Jordan saw Crystal Profit's vehicle at the unreported address.  On April 2 at 5:17 p.m. and on April 8 in the early evening, Defendant's vehicle was again parked in the driveway.  On April 22 at 9:43 p.m., Jordan observed Defendant's vehicle in the driveway and a black Cadillac on the street.  In the morning of April 23, Defendant's vehicle was no longer at the unreported address.  On that same date, Jordan and three United States Probation Officers, Austin Allison, Corey Kirk, and Adam Parades, decided to search Defendant's unreported address due to Jordan's suspicions that Defendant was residing at the unreported address in violation of his condition of supervised release.

3

Later that afternoon, Jordan called Defendant and told him that he needed to make contact with him at his residence. Defendant met Jordan at the reported address on Richmond at approximately 5:20 or 5:30 p.m. Jordan informed Defendant that they were going to search the unreported address on Vine. Jordan placed restraints on Defendant for officer safety. Jordan explained that the officers were concerned about Defendant's access to a firearm due to his prior convictions of being a felon in possession of a firearm. Due to these concerns for officer safety and the suspicion that Defendant had violated his conditions of release, Defendant's person was searched. His keys were located in his pocket. The probation officers then transported Defendant to the unreported address for the search. Defendant identified the key for the unreported address on his keychain. The officers then knocked and announced their presence at the door of the unreported address; however, no one was in the residence at the time of the search.

During the search, the officers located the following items in the southwest bedroom of the home: dry cleaning hanging in the closet with Defendant's name and phone number; a red supervision folder provided to Defendant by probation; prescription medication prescribed to Defendant; a .40 caliber Taurus magazine with bullets on a shelf in the closet; and a loaded 9 mm Smith and Wesson handgun in a dresser drawer. In the common areas of the home, officers also found the following: Defendant's expired (as of 2/17/2021) Kansas driver's license; Defendant's expired (as of 2/17/2020) Kansas identification card; a copy of the government's motion to dismiss the petition for revocation of supervised release which was filed on February 18, 2021; a property inventory form from the Sedgwick County Detention Facility dated September 30, 2020; a copy of Defendant's bond paperwork from his September 30, 2020 arrest; and various mail addressed to Defendant's reported address or Defendant's prior address from the IRS, a life insurance company, the Kansas Department of Revenue, and an automotive warehouse. In the kitchen,

officers located four baggies of acetaminophen, oxycontin, and hydrocodone.  Jordan testified that the bags appeared that they were for sale as they are in plastic baggies and not in a prescription bottle.  Based on what was seized during the search, the officers believed that the southwest bedroom belonged to Defendant.  The officers also located a resume for Curtis Profit Jr., Defendant's son, in the southeast bedroom.  The officers did not see any indicia to support a finding that a female was a resident of the unreported address.

Defendant was then taken into custody by the Sedgwick County Sheriff's Department for possession of a firearm and possession of a controlled substance.  On April 26, the probation office petitioned the court for a warrant for Defendant's arrest due to the alleged violations of his supervised release.  The petition identified four violations: 1) violation of the mandatory condition prohibiting Defendant from committing another federal, state, or local crime by possessing a firearm and a controlled substance; 2) violation of special condition number five which prohibits Defendant from possessing a firearm and ammunition; 3) violation of the mandatory condition that Defendant not unlawfully possess a controlled substance; and 4) violation of standard condition number six which requires Defendant to notify probation upon a change in residence.  (Doc. 55.) The court issued a warrant for Defendant's arrest.  Defendant then moved to suppress the evidence seized during the search and any evidence obtained from his detention during the search.  (Doc. 78.)

## II.   Analysis

Defendant's motion urges this court to find that his Fourth Amendment rights were violated by the search of the unreported address and his detention during the arrest.  Defendant seeks to exclude the evidence obtained from the search of the unreported address and any statements he made to the officers.  In response, the government argues that the exclusionary rule does not apply

to supervised release revocation hearings and that the motion should be summarily denied. Defendant recognizes this court's prior decision holding that the exclusionary rule is not applicable here but argues that it should be applied because the actions of the probation officer amounted to harassment.[1] *See United States v. Tran*, No. 08-10002-18-JWB, 2019 WL 1002592, at *1 (D. Kan. Mar. 1, 2019).

As this court previously discussed, the Supreme Court holding in *Pennsylvania Bd. of Prob. & Parole v. Scott,* 524 U.S. 357 (1998), finding that the exclusionary rule does not apply to state parole revocation hearings, is instructive here.  In that case, the Supreme Court held that the exclusionary rule, which is a judicially created means of deterring unlawful searches and seizures, is applicable "only where its deterrence benefits outweigh its 'substantial social costs.'"  *Id.* at 363. Notably, the Supreme Court has declined to extend the rule beyond criminal trials.  Based on *Scott* and its reasoning, courts have "overwhelmingly concluded the exclusionary rule does not apply to supervised release revocation proceedings in federal court."  *Tran*, 2019 WL 1002592, *2 (citing cases).  Although the Tenth Circuit has yet to rule on this issue in the context of supervised release, the circuit courts which have confronted the issue have agreed that the exclusionary rule does not apply here.  *See id.* (citing decisions from the Fourth, Fifth, Seventh, Eighth, and Ninth Circuits). Since *Tran* was decided, the Eleventh Circuit has also agreed that the exclusionary rule is not applicable in supervised release revocation proceedings.  *See United States v. Hill*, 946 F.3d 1239, 1241–42 (11th Cir. 2020).

As discussed in *Tran*, some cases have noted that the exclusionary rule does not apply in revocation hearings "absent police harassment of probationers," implying that harassment could be a valid basis for applying the exclusionary rule.  *Tran*, 2019 WL 1003592 *4 (citing *United*

---

[1] Defendant also appears to be preserving the argument that the exclusionary rule should apply to supervised release revocation proceedings.

*States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992); *United States v. Wiygul*, 578 F.2d 577, 578 (5th Cir. 1978)).  The court need not determine whether such an exception should be recognized because, even if it should, it would not apply here.  The facts in this case show that Jordan began to investigate Defendant and his unreported address after receiving information from an unrelated investigation.  Jordan's investigation of Defendant and the unreported address was routine and Defendant has not shown any evidence that would suggest that Jordan was harassing Defendant.  Rather, after obtaining information regarding the water bill, Jordan conducted several observations of the unreported address by driving by or stationing himself in a position to conduct surveillance.  Jordan was merely performing his job duties in conducting this investigation.

As discussed in *Tran*, the authority of *Scott* and related decisions compels this court to conclude that the exclusionary rule does not apply to this supervised release revocation proceeding.  Therefore, Defendant's motion to suppress the evidence in this case on the basis that it was seized in violation of his Fourth Amendment rights is denied.

Moreover, the court further finds that the probation officers complied with the conditions of supervised release which allow a search of Defendant's person and entire residence based on reasonable suspicion that a violation occurred.  As stated during the hearing, the facts discussed herein and testified to by Jordan clearly gave rise to reasonable suspicion that Defendant had an unreported change in residence, which is a violation of standard condition number six.  This provided Jordan with a basis to search Defendant's person and seize the keys and a basis to search

the entire residence.[2]  The court further finds that the searches were conducted in a reasonable time and in a reasonable manner as required by the condition.[3]

### III.   Conclusion

Defendant's motion to suppress is DENIED.[4]

IT IS SO ORDERED.  Dated this 1st day of November, 2021.

_\_\_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

---

[2] The search condition states as follows: "The defendant shall submit his/her person, house, residence, vehicle(s), papers, business or place of employment and any property under the defendant's control to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition." (Doc. 20 at 4.)

[3] Defendant also argues that he was arrested in violation of the Fourth Amendment when he was detained during the search and placed in handcuffs.  Defendant argues that any statements he made or evidence obtained as a result must be suppressed.  Essentially, Defendant argues that the evidence in the unreported address should be suppressed as the keys were obtained as a result of his unlawful detention.  As discussed, the court finds that the exclusionary rule does not apply in these proceedings.  Moreover, according to the testimony, the keys were obtained during a search of his person which was allowed under the conditions of his supervised release.

[4] During the evidentiary hearing to establish whether a violation occurred, Defendant did present testimony of two witnesses, Defendant's sister Crystal and Beals, regarding ownership of the firearm and ammunition at issue in the violation.  Beals claimed ownership of the Smith & Wesson during her testimony while Crystal claimed ownership of the ammunition in the closet.  The court found their testimony to be not credible and riddled with inconsistencies as stated on the record.  The court concluded that the government had established two violations of his condition of release, a violation of special condition number five by possession of the firearm and ammunition and a violation of standard condition number six by failing to report a change in address.  The court's findings regarding the violations are included on the record and there is no reason to restate those findings in this order.